## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CODY LUNSFORD,

       Plaintiff,

     -vs-                                     No. Civ. 11-0169 LH/LAM

OFFICER JON M. HOWARD in his official and
individual capacity as an employee of the City of
Clovis and CITY OF CLOVIS,

       Defendants.

## <u>MEMORANDUM OPINION</u>

**THIS MATTER** comes before the Court on the Motion for Summary Judgment of Defendants City of Clovis and Jonathon M. Howard (Docket No. 29). The Court, having reviewed the Motion, the accompanying memoranda, and the applicable law, and otherwise being fully advised, finds that the Motion is well taken and it will be **granted**.

In his First Amended Complaint (Docket No. 26), filed May 16, 2011, Plaintiff Cody Lunsford asserts various claims pursuant to 42 U.S.C. § 1983 and the New Mexico Tort Claims Act: unreasonable seizure (Count I) and excessive and unnecessary use of force (Count II) in violation of the Fourth Amendment; violation of his Fourteenth Amendment liberty interest to be free of arrest for minor traffic violations (Count III); malicious prosecution (Count IV) and false imprisonment and false arrest (Count V) in violation of the New Mexico Tort Claims Act; and negligent hiring, training, supervision, and retention on the part of the City of Clovis (Count VI). These claims arise

from his arrest on September 22, 2010, by Officer Jon M. Howard, a police officer for the City of Clovis.

As related in the First Amended Complaint, Mr. Lunsford, accompanied by his wife, was driving his car in the rain in Clovis, New Mexico, when water and oil in a dip in the road caused him to hydroplane into the opposite lane, with the vehicle coming to rest facing oncoming traffic.  Mr. Lunsford then drove to a parking lot across the street, where he got out to inspect the car for damages.  Officer Howard arrived on the scene and asked Plaintiff whether he had been smoking pot.  Mr. Lunsford responded that he did not use drugs, to which Officer Lunsford stated, "Well you have me out in this rain," and then handcuffed Mr. Lunsford and placed him in the back of the patrol vehicle.  Officer Howard  proceeded to question Mr. Lunsford about how fast he had been driving.  Plaintiff responded that he was traveling the speed limit.  Office Howard then drove to a curb, showed Plaintiff a small chip in it, and told Plaintiff that he was responsible for the damage.  Mr. Lunsford said he did not think he was responsible for the damage, but Officer Howard drove to the police station and booked him into jail.  Mr. Lunsford alleges that he was handcuffed for over four hours and had to pay $1,500 to bond out of jail.  He was charged with careless driving, failing to provide immediate notice, and leaving the scene of a crash.

Defendants move for summary judgment on all claims.  In support of their Motion, they expand upon the facts alleged by Mr. Lunsford in his First Amended Complaint.  According to Defendants, a citizen named Wendy Swaim saw Plaintiff's car hydroplane into opposing traffic and called 911 at 8:06 p.m.  She reported that she had witnessed a car wreck - a silver Camaro hit a wall, curb, or "something."  She further stated that the car was "messed up" and after pulling into a parking lot the driver was leaving the scene.  The 911 operator dispatched Officer Howard to investigate, telling him that a Camaro had caused an accident, hit something, and then left the scene.

2

Officer Howard located Plaintiff in another parking lot, inspecting for damage under his vehicle with a flashlight because he was having trouble with the steering.  Mr. Lunsford admitted to Officer Howard that he had lost control of his car, hydroplaned, and while driving away experienced trouble with the steering.  Mr. Lunsford also informed Officer Howard that he had called his parents and they told him to leave.

According to Officer Howard, it is normal policy to arrest someone who has left the scene of an accident and he proceeded to arrest Mr. Lunsford, charging him with Careless Driving, Immediate notice of crash, and Leaving the scene.  After handcuffing Plaintiff and putting him in the back seat of his police unit, Officer Howard drove to the area where the crash had been reported and saw fresh damage to the curb.  He then transported Plaintiff to the Curry County Detention Center, where he gave Plaintiff the citations and turned him over to the custody of the Detention Center.  The handcuffs were removed from Mr. Lunsford and returned to Officer Howard, who after about ten minutes at the Detention Center went to the police station and completed an accident report and a criminal complaint.

Officer Howard testified on October 20, 2010, when Plaintiff was tried before Municipal Judge Jan Garrett.  Judge Garrett found Mr. Lunsford guilty on all charges.

Defendants support their Statement of Undisputed Material Facts with the Affidavit of Sheryl Grasby, Telecommunications Supervisor of the City of Clovis, and Officer Howard's affidavit, along with copies of the 911 call made by Wendy Swaim; the Call Report; the December 9, 2010, Judgment and Order Deferring Sentence; and the accident report, which includes the State of New Mexico Uniform Crash Report, the Booking Report and Criminal Complaint, and the Uniform Traffic Citations.  As grounds for summary judgment, they first maintain that based on Plaintiff's conviction on the charges, all claims except those for excessive force and assault and battery are

barred by the doctrine of collateral estoppel.  As for the charges of excessive force and assault and battery, which they argue are based on Plaintiff's alleged detention in handcuffs for more than four hours after being booked into the Curry County Detention Center, Defendants contend that even if this did occur, it was not the act of Officer Howard.  Defendants alternatively maintain that such detention, without more, does not constitute a cognizable violation of the Fourth Amendment or state law.  Finally, Defendants assert qualified immunity as a bar to all of Plaintiff's claims.

Plaintiff first responds by objecting to the evidence[1] offered by Defendants in support of their Statement of Undisputed Material Facts as hearsay.  Thus, Plaintiff argues that Ms. Grasby, as "merely the custodian of the dispatch logs and audio records," has no first hand knowledge of the actual events.  Plaintiff similarly objects to the CD recording of the 911 call as inadmissible hearsay and  further complains that Defendants have offered no affidavit or sworn testimony authenticating the accident report, citations, criminal complaint, and booking sheet and record.  Plaintiff particularly objects to Officer Howard's accident report, on grounds that he was not present when the alleged accident occurred.  Plaintiff also contends that inconsistencies and ambiguities in Officer Howard's statements as to why he arrested Plaintiff preclude summary judgment and require further discovery, including deposing Officer Howard.

Continuing this line of argument, Plaintiff requests that Defendants' Motion be denied, pending discovery, as provided by FED. R. CIV. P. 56(d).[2]  He insists that there are many disputed

---

[1]     To the extent Plaintiff alleges any discovery irregularities regarding Officer Howard's responses to interrogatories, such disputes are properly addressed to the Magistrate Judge, not in a response to a motion for summary judgment.

[2]     Although Plaintiff cites to Rule 56(f), the Court notes that as of the December 1, 2010, revision of the Federal Rules of Civil Procedure, subsection (f) was moved to subsection (d), without substantial change:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1)  defer considering the motion or deny it;

or "undeveloped" facts that might affect the outcome of his claims, such as police justification for his arrest. Plaintiff argues that he is not collaterally stopped from bringing his claims of unreasonable arrest and violation of his liberty interest under the Fourth and Fourteenth Amendments, as Officer Howard had no discretion and only should have issued a citation and released him on his signature. Plaintiff identifies the critical issue in this litigation as why Officer Howard arrested him and insists Officer Howard must explain under what theory of law and set of facts he had grounds to do so. He concludes by asserting that even if his federal claims fail, Defendants should still be liable under state law.

In their reply brief, Defendants first address Plaintiff's hearsay challenges, explaining that they sought through their exhibits to provide the information that was available to Officer Howard when he arrested Plaintiff, whether hearsay or not, only to show, as required under the qualified immunity inquiry, that given the information he had at the time, he acted reasonably under the circumstances. Defendants further note that the custodian of the dispatch logs and audio records of the Clovis Police Department, as Ms. Grasby avers in her affidavit she is, is a proper person to authenticate the documents and establish their admissibility as business records, pursuant to FED. R. EVID. 803(6). Defendants also offer Ms. Grasby's supplemental affidavit to clarify that 911 calls are contemporaneously recorded and documented on a computerized call log as a matter of routine practice.

Similarly, Officer Howard supplements his affidavit to clarify that he routinely prepares the reports and other documents offered, as required by law and as a regular part of his duties as a police

---

(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

FED. R. CIV. P. 56(d); *see also* Advisory Committee's Note (2010 Amendments). The Court refers throughout to the new subsection.

officer.  Additionally, Defendants disagree that there are any material inconsistencies regarding the statements Officer Howard gave, and that, in any case, Plaintiff has not met his burden to show what discovery is needed to meet the motion for qualified immunity.

Defendants further contend that Plaintiff has not sufficiently challenged their legal argument that his conviction acts as a bar to claims that his arrest and prosecution were improper, and that he has not shown any factual dispute precluding summary judgment on the assault and battery claim. Finally, Defendants maintain that not only have they established that under Fourth Amendment constitutional law it is permissible to arrest a driver for any traffic offense, but also that under state law and the facts of this case Officer Howard was allowed to arrest Plaintiff, rather than offer him the opportunity to accept a citation in lieu of an arrest, thereby negating Plaintiff's Fourteenth Amendment claim.


"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (internal quotations omitted). Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving

party meets its burden, the nonmoving party must show that genuine issues remain for trial.  *Id.*  The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.*; *Kaus v. Standard Ins. Co.*, 985 F.Supp. 1277, 1281 (D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.

A law enforcement officer is, "of course, entitled to a presumption that [he is] immune from lawsuits seeking damages for conduct [he] undertook in the course of performing [his] job[]."  *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011).  As the *Kerns* Court notes, "'[i]f qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit.'"  *Id.* (quoting *Lewis v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010)).  Therefore, "[i]f the actions are those a reasonable person could have believed were lawful, [the defendant is] entitled to dismissal before discovery."  *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992).  To overcome the presumption of immunity, a plaintiff carries a heavy burden; he must show "both that (1) the defendant-officer in question violated one of his constitutional rights, and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that 'every reasonable official would have understood that what he [was] doing' violated the law."  *Kerns*, 663 F.3d at 1180 (alteration in original) (quoting *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2080, 2083 (2011)).  "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'"  *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (internal quotation marks omitted)).

As an intial matter, the Court finds Plaintiff's objections regarding Defendants' Statement of Undisputed Material Facts are without merit.  Discovery in this matter has been stayed pending resolution of  the issue of qualified immunity.  Order Granting Motion to Stay Discovery ["Order Staying Discovery"] (Docket No. 40).  As the Supreme Court has made clear, "the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims against government officials [will] be resolved prior to discovery.'"  *Pearson*, 555 U.S. at 231-32 (internal quotation marks omitted, alteration in original) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 n.2 (1987)).  Thus, "'[u]ntil this *threshold* immunity question is resolved, discovery should not be allowed.'"  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Court, however, may allow additional discovery upon the filing of an affidavit, pursuant to FED. R. CIV. P. 56(d).  While a Rule 56(d) affidavit generally "'should be treated liberally unless dilatory or lacking in merit,'" *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990) (quoting *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir. 1984)), "'discretion must be limited when a summary judgment motion is based on qualified immunity, [in order not] to subvert the goals of *Harlow* and its progeny,'" *id.* (quoting *Jones v. City and Cnty. of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988)).  Therefore,

> in response to a summary judgment motion based on qualified immunity, a plaintiff's 56([d]) affidavit must demonstrate "*how* discovery will enable [him] to rebut a defendant's showing of objective reasonableness" or, stated alternatively, demonstrate a "connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion."  To that end, it is insufficient for the party opposing the motion to merely assert that additional discovery is required to demonstrate a factual dispute or "that evidence supporting a party's allegation is in the opposing party's hands."

*Id.* (last alteration in original) (quoting *Jones*, 854 F.2d at 1211; citing *Patty Precision*, 742 F.2d at 1264). Rule 56(d), then, "is not a license for a fishing expedition, especially when summary judgment is urged based on a claim of qualified immunity." *Id.* at 759.

As Magistrate Judge Martinez determined in ordering the stay of discovery in this matter, "Plaintiff fails to state with any particularity what discovery he seeks." Order Staying Discovery at 3. The same conclusion must be reached when addressing the sufficiency of the affidavit in response to Defendants' Motion for Summary Judgment. Plaintiff states that he "cannot by affidavit present the additional facts that the Court may deem essential to establishing a genuine issue regarding whether Defendants should be dismissed from this lawsuit," maintaining that the only way he could do so is through deposing Officer Howard, the other officers present at the scene, and the 911 caller. Aff. Counsel (Docket No. 33-4) ¶ 2.

Significantly, and inexplicably, Plaintiff fails to provide even his own affidavit attesting to the facts of his case.[3] If Defendants' Statement of Undisputed Material Facts can be genuinely disputed as to matters such as the events leading to his arrest, his booking at the Curry County Detention Center, and his trial, he had the opportunity to so show the Court through his affidavit. Having not done so, his claim to need more discovery rings hollow. Additionally, specific discovery that he does identify, such as under what theory of law and set of facts Officer Howard had grounds

---

[3]     While Plaintiff asserts in his Response that he "can certainly submit an affidavit to dispute the allegations made by Officer Howard and that state facts as he has alleged in his Complaint," he did not do so. *See* Resp. 10. Rather, he makes the conclusory assertion that "[t]here are many disputed facts that might affect the outcome of the claims in this case," and complains that he has not had an "opportunity to develop any factual record on the remainder of the motion or on the key fact of the police justification for the arrest." *Id.* He continues, that "[w]]ithout a factual proffer on the facts leading up to the charges, he is unable to rebut any fact." *Id.* He does not explain why Defendants' Statement of Undisputed Facts is not such a proffer, and, as discussed above, he does not meet the requirements of Rule 56(d), especially given Defendants' claim of qualified immunity. Additionally, "police justification for the arrest" is irrelevant to the qualified immunity analysis. Furthermore, Plaintiff has offered no authority for the proposition that he might be permitted to supplement the record with his affidavit if further discovery is denied and has not shown good cause why he should be allowed to do so.

to arrest him and what he claims is "the critical issue" in this case - why Officer Howard arrested him, all involving inquiry into subjective motivation, are not material under the objective legal standard used in determining the reasonableness of a defendant's actions.

Plaintiff's evidentiary objections are also flawed.  First, much of the evidence Plaintiff argues is inadmissible as hearsay, such as the tapes of the 911 calls and the police report and booking records, is not offered by Defendants for the truth of the matters contained therein, but rather to show the information upon which Officer Howard acted.  This, of course, is relevant to the determination of whether he acted reasonably under the circumstances. *Cf. Cortez v. McCauley*, 478 F.3d 1108, 1118 (10th Cir. 2007) (en banc) ("The fact that hearsay evidence would not be admissible at trial to prove guilt does not make it unusable as a source of probable cause for a warrantless arrest.").  This evidence also clearly falls under the hearsay exception for business records. *See* FED. R. EVID. 803(6).  Furthermore, Plaintiff does not identify, much less establish, any genuine issues of material fact.  Instead, he only offers conclusory objections to supposed contradictory statements, without specifically identifying the relevance of any contradictions.  Thus, Plaintiff having offered insufficient objections to Defendants' Statement of Undisputed Material Facts and not having established that he is entitled to discovery under Rule 56(d), the Court will proceed with its legal analysis.[4]

Defendants first argue that, except for use of excessive force and assault and battery, all of Plaintiff's claims are barred by the doctrine of collateral estoppel.  As the Supreme Court noted in

---

[4]   In so doing, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

*Allen v. McCurry*, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so:

> '[J]udicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State. . . .'  28 U.S.C. § 1738 (1976)."

449 U.S. 90, 96 (1980) (alterations in original, footnote omitted) (citing *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 193 (1941); *Davis v. Davis*, 305 U.S. 32, 40 (1938)). Thus, the *Allen* Court held that "judgments rendered upon matters in issue in state criminal proceedings may collaterally preclude their relitigation in a subsequent civil suit brought under 42 U.S.C. § 1983." *Franklin v. Thompson*, 981 F.2d 1168, 1170 (10th Cir. 1992) (citing *Allen*, 449 U.S. at 103-04).  When determining whether a prior state court judgment bars litigation of an issue in a §1983 claim, "[t]he federal court must apply the state collateral estoppel rules." *Id.* (citing *Haring v. Prosise*, 462 U.S. 306, 314 (1983); *Hubbert v. City of Moore*, 923 F.2d 769, 772-73 (10th Cir. 1991)).

In New Mexico, four elements must be present "before invoking collateral estoppel: (1) the parties are the same or are privies of the original parties; (2) the cause of action is different; (3) the issue or fact was actually litigated; and (4) the issue was necessarily determined." *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 n.2 (10th Cir. 1999) (citing *Int'l Paper Co. v. Farrar,* 102 N.M. 739, 700 P.2d 642, 644-45 (1985)).  More particularly, the party seeking to use collateral estoppel as a defense "must meet at least two conditions[: f]irst, it must establish that the issue to be estopped has been actually litigated and necessarily decided in the prior proceeding[, and s]econd, the Court must be satisfied that the party to be estopped had a full and fair opportunity to litigate in

the prior action." *Phillips v. Franco*, 612 F. Supp. 2d 1190, 1194 (D.N.M. 2009) (internal citations and footnote omitted) (citing *Deflon v. Sawyers*, 139 N.M. 637, 137 P.3d 577, 583 (2006)).

Following a trial in the Municipal Court for the City of Clovis, at which Officer Howard was the "Prosecuting Officer," the Municipal Court Judge found Plaintiff guilty on three counts: "Duty upon Striking Fixtures or Property upon a Street . . . , Failure to Make Immediate Notice of Accident . . . , [and] Carless [sic] Driving."  Memo. Brief Supp. Mot. Summ. J. (Docket No. 30), Attach. 1. Ex. B Judgment and Order Deferring Sentence.  Plaintiff purports to attack the validity of these convictions by claiming that he needs further discovery because "upon information and belief [he] was told to waive his right to counsel and never informed of his right to appeal."  Not only is the Court perplexed as to why discovery would be necessary concerning issues clearly within Plaintiff's knowledge, but the Court can not and will not find that such unsupported and unverified assertions in any way negate a presumption that Plaintiff had a full and fair opportunity to litigate the charges against him in the state court.  The Court further concludes that these guilty verdicts necessarily establish that no factual question exists as to whether Officer Howard had probable cause to arrest Plaintiff.  *See Santillo v. N. M. Dep't of Pub. Safety*, 143 N.M. 84, 88, 173 P.3d 6, 10 (Ct. App. 2007) ("Law enforcement officers have probable cause to arrest a person 'when the facts and circumstances within the officers' knowledge, and of which they had reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been, or is being, committed.' *State v. Duffy*, 1998-NMSC-014, ¶ 69, 126 N.M. 132, 967 P.2d 807 (internal quotations marks and citation omitted).").  Thus, Plaintiff is estopped from arguing lack of probable cause to arrest on his fourth amendment unreasonable seizure claim, and his state law claims of false arrest, false imprisonment, and malicious prosecution also must fail.  *Id.* at 88-89, 173 P.2d at 10-11 ("An officer who has probable cause to arrest a person cannot be held liable for

12

false arrest or imprisonment, since probable cause provides him with the necessary authority to carry

out the arrest.  *See State v. Johnson*, 1996-NMSC-075, ¶ 16, 122 N.M. 696, 930 P.2d 1148 . . . . [The

officer] cannot be held liable for false imprisonment, false arrest, or for malicious abuse of process

based on a lack of probable cause."); *see also Gouskos v. Griffith*, 122 F. App'x 965, 972 (10th Cir.

2005) ("[I]f the false-arrest plaintiff is convicted in the criminal trial for the acts for which he was

arrested, probable cause for his arrest is conclusively established and precludes a subsequent civil

action for false arrest.") (citing *Franklin*, 981 F.2d at 1171)); *Jackson v. Loftis*, 189 F. App'x 775,

780 n.3 (10th Cir.2006) ("[A] conviction, by plea or trial, that establishes probable cause for arrest

. . . is conclusive on the issue in later civil rights litigation.  *See, e.g., Williams v. Schario*, 93 F.3d

527, 528-29 (8th Cir. 1996); *Maietta v. Artuz*, 84 F.3d 100, 102 n.1 (2d Cir. 1996); *Preast v. McGill*,

65 F. Supp. 2d 395, 409 & n.10 (S.D. W.Va. 1999).").

    Plaintiff maintains that his Fourteenth Amendment claim of a liberty interest to be free from

arrest for minor traffic violations is not collaterally estopped by his convictions.  He cites N.M.

STAT. ANN. §§ 66-8-123[5] and -117,[6] for the proposition that Officer Howard violated state law by

---

[5]    Section 66-8-123, titled "Conduct of arresting officer; notices by citation," provides in pertinent part:

A. Except as provided in Section 66-8-122 NMSA 1978, unless a penalty assessment or warning notice is given, whenever a person is arrested for any violation of the Motor Vehicle Code or other law relating to motor vehicles punishable as a misdemeanor, the arresting officer, using the uniform traffic citation, shall complete the information section and prepare a notice to appear in court, specifying the time and place to appear, have the arrested person sign the agreement to appear as specified, give a copy of the citation to the arrested person and release him from custody.

B. Whenever a person is arrested for violation of a penalty assessment misdemeanor and elects to pay the penalty assessment, the arresting officer, using the uniform traffic citation, shall complete the information section and prepare the penalty assessment notice indicating the amount of the penalty assessment, have the arrested person sign the agreement to pay the amount prescribed, give a copy of the citation along with a business reply envelope addressed to the motor vehicle division, Santa Fe to the arrested person and release him from custody. . . . If the arrested person declines to accept a penalty assessment notice, the officer shall issue a notice to appear.

C. The arresting officer may issue a warning notice but shall fill in the information section of the uniform traffic citation and give a copy to the arrested person after requiring his signature on the

arresting him, rather than issuing a citation and releasing him.  While Plaintiff is correct that state

law containing mandatory substantive predicates can create a protected liberty interest, *see, e.g.,*

*Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989) (quoting *Hewitt v. Helms*, 459 U.S.

460, 472 (1983)), his claim fails on several grounds.

First, Plaintiff is incorrect in his assertion that he had the right under New Mexico law only

to be cited and/or offered the option of accepting a penalty assessment and then allowed to go.  The

statutory provision upon which he bases his position begins with the very exception that negates it:

"Except as provided in Section 66-8-122 . . . ."  N.M. STAT. ANN. § 66-8-123(A).  Section 66-8-122,

titled "Immediate appearance before magistrate," provides that

> [w]henever any person is arrested for any violation of the Motor Vehicle Code or
> other law relating to motor vehicles punishable as a misdemeanor, he shall be
> immediately taken before an available magistrate who has jurisdiction of the offense
> when the . . . person is charged with failure to stop in the event of an accident
> causing . . . damage to property [or the] person is charged with reckless driving.

N.M. STAT. ANN. § 66-8-122(C), (D).  Plaintiff was charged with both leaving the scene of an

accident which had caused damage to property and careless driving, both of which are exceptions

to the citation provision of § 66-8-123(A).  Also, neither of these violations qualifies as a "penalty

---

warning notice as an acknowledgment of receipt. . . .

D. In order to secure his release, the arrested person must give his written promise to appear in court
or to pay the penalty assessment prescribed or acknowledge receipt of a warning notice.

E. Any officer violating this section is guilty of a misconduct in office and is subject to removal.
. . . .

N.M. STAT. ANN. § 66-8-123(A)-(E).

⁶    Section 66-8-117, titled "Penalty assessment misdemeanors; option; effect," provides in pertinent part:
"Unless a warning notice is given, at the time of making an arrest for any penalty assessment misdemeanor the arresting
officer shall offer the alleged violator the option of accepting a penalty assessment.  N.M. STAT. ANN. § 66-8-117(A).

assessment misdemeanor" under §§ 66-8-117 or -123((B).  *See* N.M. STAT. ANN. § 66-8-116, titled

"Penalty assessment misdemeanors; definition; schedule of assessments."

Furthermore, "'[w]here a particular Amendment provides an explicit textual source of

constitutional protection against a particular sort of government behavior, that Amendment, not the

more generalized notion of substantive due process, must be the guide for analyzing these claims.'"

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (alteration in original) (quoting *Albright*

*v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.) (quoting *Graham v.*

*Connor*, 490 U.S. 386, 395 (1989)) (internal quotation marks omitted)); *cf. Pino v. Higgs*, 75 F.3d

1461, 1469 (10th Cir. 1996) ("[B]ecause Appellant has failed to establish that Appellees

unreasonably seized her [for an involuntary emergency mental health evaluation] in violation of the

Fourth Amendment, her Fourteenth Amendment due process claims also necessarily fail.").  Under

the Fourth Amendment, it is clear that "'[a] state-law violation does not . . . necessarily rise to the

level of a constitutional violation.'"  *Bowling v. Rector*, 584 F.3d 956, 966 (10th Cir. 2009)

(alteration and omission in original) (quoting *United States v. Gonzales*, 535 F.3d 1174, 1182 (10th

Cir. 2008)).  Indeed, the Supreme Court has held "that when police officers have probable cause to

believe a person has committed a crime in their presence, the Fourth Amendment permits a

warrantless arrest . . . regardless of whether the crime qualifies as an arrestable offense under

applicable state law."  *United States v. Turner*, 553 F.3d 1337, 1345-46 (10th Cir. 2009) (citing

*Virginia v. Moore*, 553 U.S. 164, 128 S. Ct. 1598, 1608 (2008) and discussing *Atwater v. City of*

*Lago Vista*, 532 U.S. 318, 323 (2001) ("warrantless arrests for minor misdemeanors punishable only

by a fine do not violate the Fourth Amendment")).  Thus, the Court does not believe that the

circumstances of this case could afford Plaintiff the right he claims under the Fourteenth

Amendment, even if Officer Howard had violated state law.  Additionally, because his Fourth

Amendment unreasonable arrest claim fails, Plaintiff, in any case, would be estopped from pursuing a Fourteenth Amendment liberty claim.  For all these reasons, Plaintiff's Fourteenth Amendment claim fails.

Plaintiff's final claim under § 1983 is excessive and unnecessary use of force in violation of the Fourth Amendment, based upon his having been seized and handcuffed, allegedly for over four hours.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV. In *Cortez*, the Tenth Circuit Court of Appeals held that

> in cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it.  If the plaintiff can prove that the officers lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force reasonably employed in effecting the arrest.  If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force.  These two inquiries are separate and independent, though the evidence may overlap.  The plaintiff might succeed in proving the unlawful arrest claim, the excessive force claim, both, or neither

478 F.3d at 1127 (footnotes omitted).  In this matter, Plaintiff succeeds in proving neither claim.

As has been discussed above, Plaintiff's unlawful arrest claim fails as a matter of law.  Given that the arrest was lawful, the act of handcuffing him in effecting the arrest and transporting him for booking is also permissible under the Fourth Amendment.  *Fisher v. City of Las Cruces*, 584 F.3d 888, 896-97 (10th Cir. 2009) ("[I]n nearly every situation where an arrest is authorized . . . handcuffing is appropriate. . . . [H]andcuffing itself is not necessarily an excessive use of force in connection with an arrest."); *Cortez*, 478 F.3d at 1128 ("We have little difficulty concluding that a small amount of force, like grabbing Rick Cortez and placing him in the patrol car, is permissible in effecting an arrest under the Fourth Amendment.") (citing *Atwater*, 532 U.S. at 354-55 (noting

16

that a normal lawful custodial arrest where one is handcuffed, placed in a patrol car, and taken to the police station may be inconvenient and embarrassing, but not violative of the Fourth Amendment) and *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.")); *Calvi v. Knox Cnty.*, 470 F.3d 422, 428 (1st Cir. 2006) (standard police practice of cuffing arrestee's hands behind back in customary manner and for no more than time reasonably necessary to transport to lockup not excessive force); *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001) ("[W]hen there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment.") (footnote omitted)); *Soares v. Connecticut*, 8 F.3d 917, 921-22 (2d Cir. 1993) (although handcuffing not per se reasonable, it "will be the reasonable course in many, if not most arrest situations[; n]either the Supreme Court nor the Second Circuit has established that a person has the right not to be handcuffed in the course of a particular arrest, even if he does not resist or attempt to flee.").

While the decision to handcuff may be reasonable, the "*manner*" in which an individual is handcuffed can be at issue: "'If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force.'" *Fisher*, 584 F.3d at 893-94 (quoting *Cortez*, 478 F.3d at 1127). To recover in a handcuffing case claiming excessive force, then, "'a plaintiff must show: (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional.'" *Id.* at 894 (quoting *Cortez*, 478 F.3d at 1129 n.25). Although in his Amended Complaint Plaintiff claims to have "suffered physical injury and emotional distress," he describes

17

no actual injury, de minimis or otherwise, and alleges no use of force beyond being handcuffed. Thus, his claim of excessive force rests solely on the allegation that he was handcuffed for more than four hours.

The Tenth Circuit Court of Appeals has recognized that even when the use of handcuffs is initially justifiable, prolonged duration of use can become unreasonable. *Fisher*, 584 F.3d at 894 (citing *Muehler v. Mena*, 544 U.S. 93, 100 (2005)). This, however, is not such a case. After arresting Plaintiff, Officer Howard handcuffed him, put him in the back seat of the patrol car, and drove to the scene of the accident to inspect for damage. He then transported Mr. Lunsford to the Curry County Detention Center, gave Plaintiff the citations, and turned him over to officials there for processing and booking. The handcuffs were removed and returned to Officer Howard, who after about ten minutes at the Detention Center, returned to the police station. Nothing about these circumstances suggests an unreasonable or excessive use of force by Officer Howard.[7] *See, e.g., Johnson v. City of New York*, 940 F. Supp. 631, 636-37 (S.D.N.Y. 1996) (granting qualified immunity to arresting officer on excessive force claim where plaintiff kept in handcuff throughout four to five hours detention); *Bourgeois v. Pelkey*, 2011 WL 1135927, at *5 (N.D.N.Y. 2011) ("[E]xcessive force claim seems to be based solely on the fact [plaintiff] was arrested, handcuffed, placed into a police car, and held several hours at [police department]. Neither the evidence on record nor . . . allegations suggest that force used by [officers] was in any way excessive or

---

[7]    The Court notes that, under the circumstances of this case, Officer Howard may not be held responsible for the conditions under which Plaintiff was held while in the custody of the Detention Center. "Personal liability 'under § 1983 must be based on personal involvement in the alleged constitutional violation.'" *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.1997)). Even if he were to be, however, whether considered under a Fourth Amendment or Fourteenth Amendment standard, there was no constitutional violation.

unreasonable under the circumstances."); *Ray v. Donovan*, 2006 WL 3746963, at *7 n.6 (D. Me. 2006) (*Calvi*, 470 F.3d 422, strongly supports conclusion no excessive force claim under either Fourth or Fourteenth Amendment for being handcuffed for two hours after arriving at jail); *Barratt v. Joie*, 2002 WL 335014, at *9 (S.D.N.Y. 2002) ("no reasonable jury" could find keeping detainee handcuffed for approximately five hours in holding cell shocks the conscience, was malicious, or was excessive force amounting to unconstitutional punishment); *cf. Unus v. Kane*, 565 F.3d 103, 120 (4th Cir. 2009) (not unreasonable to keep two female residents detained in handcuffs nearly four hours while executing "terrorism-related warrant" at home); *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 467-69 (S.D.N.Y. 2008) (finding even tight handcuffing of residents for three hours during execution of search warrant at home objectively reasonable) (citing *Mena*, 544 U.S. at 100 (two to three hours) and *Johnson*, 940 F. Supp. at 637 (four to five hours), where excessive force claims based on handcuffing lasting as long or longer were dismissed).   Thus, Plaintiff's excessive force claim will be dismissed.   Furthermore, as Plaintiff's assault and battery claim is based upon the alleged excessive and unnecessary use of force by handcuffing, it, too, will be dismissed.

Finally, it is clear in this matter that Officer Howard also would be entitled to dismissal of this case on grounds of qualified immunity.   Plaintiff has failed to show that Officer Howard's actions were in any way objectively unreasonable and, therefore, in violation of Plaintiff's constitutional or statutory rights.   Furthermore, even if Officer Howard's actions were found to have violated any of Plaintiff's rights in some manner, those rights were not clearly established so that "every reasonable official would have understood that what he [was] doing' violated the law." *See Kerns*, 663 F.3d at 1180.

Given that Plaintiff's claims against Officer Howard fail, the claims of negligent hiring, training, supervision, and retention against the City of Clovis also must be dismissed. *See, e.g. Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1104-05 (10th Cir. 2009) (Section 1983 "liability will not attach 'where there was no underlying constitutional violation by any of [the municipality's] officers.'") (alteration in original) (quoting *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006)); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

An Order in accordance with this Memorandum Opinion shall be entered contemporaneously.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**